**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| OPENPRINT LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1077-GMS |
| | ) | |
| HP INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF
ITS MOTION FOR JUDGMENT ON THE PLEADINGS
<u>THAT U.S. PATENT NO. 8,547,601 IS INVALID UNDER 35 U.S.C. § 101</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF ABBREVIATIONS .................................................................................................. V

INTRODUCTION .................................................................................................................. 1

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 2

SUMMARY OF ARGUMENT ................................................................................................. 3

STATEMENT OF FACTS ...................................................................................................... 3

LEGAL STANDARDS .......................................................................................................... 4

I.      Judgment on the Pleadings.................................................................................. 4

II.     Patentable Subject Matter Under 35 U.S.C. § 101 ........................................... 5

ARGUMENT ....................................................................................................................... 6

I.      *Alice* Step One: The Asserted Claims Are Directed to an Abstract Idea........................... 6

        A.      The Asserted Claims Are Directed to Delivering a Fax to an E-mail
                Address ............................................................................................... 7

        B.      Delivering a Fax to an E-mail Address Is an Abstract Idea................................ 12

II.     *Alice* Step Two: The Asserted Claims Lack an Inventive Concept ................................ 17

CONCLUSION.................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTTV, LLC,*
   838 F.3d 1253 (Fed. Cir. 2016)..................................................................................10, 19

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
   134 S. Ct. 2347 (2014) ................................................................................. *passim*

*Audatex N. Am., Inc. v. Mitchell Int'l, Inc.,*
   2017 WL 3188451 (Fed. Cir. July 27, 2017) ..........................................................19

*In re Bilski,*
   545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd Bilski v. Kappos*, 561 U.S. 593
   (2010) ...................................................................................................................5, 6, 11

*Blackbird Tech LLC v. Advanced Discovery, Inc.,*
   2017 WL 2734725 (D. Del. June 6, 2017)...............................................................19

*buySAFE v. Google Inc.,*
   765 F.3d 1350 (Fed. Cir. 2014)..............................................................................5, 18

*Carilogic, Inc. v. FormFree Holdings Corp.,*
   681 F. App'x 950 (Fed. Cir. 2017) .........................................................................16

*Compression Techs. Solutions LLC v. EMC Corp.,*
   2013 WL 2368039 (N.D. Cal. May 29, 2013) .......................................................15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
   776 F.3d 1343 (Fed. Cir. 2014).......................................................2, 12, 13, 14

*Data Engine Techs., LLC v. Google Inc.,*
   211 F. Supp. 3d 669, 674 (D. Del. 2016) ................................................................4

*Dealertrack, Inc. v. Huber,*
   674 F.3d 1315 (Fed. Cir. 2012)..............................................................................7, 17

*EasyWeb Innovations, LLC v. Twitter, Inc.,*
   689 F. App'x 969 (Fed. Cir. 2017) ....................................................2, 12, 15, 18

*Elec. Pwr. Grp., LLC v. Alstom S.A.,*
   830 F.3d 1350 (Fed. Cir. 2016)................................................................. *passim*

*FairWarning IP, LLC v. Iatric Sys., Inc.,*
   839 F.3d 1089 (Fed. Cir. 2016)............................................................................15, 19

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
C.A. No. 12-193-LPS et al., 2016 WL 7491806, at *2 (D. Del. 2016......................................5

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
850 F.3d 1332 (Fed. Cir. 2017)...........................................................................5, 6

*Intellectual Ventures I LLC v. Erie Indem.*,
850 F.3d 1315 (Fed. Cir. 2017)................................................................................16

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015)..................................................................................7

*IV I LLC v. T-Mobile USA, Inc.*,
2017 U.S. Dist. LEXIS 134551 (D. Del. Aug. 23, 2017) ..............................2, 6, 16

*Kaavo Inc. v. Cognizant Tech. Sol. Corp.*,
2015 WL 1737476 (D. Del. Apr. 9, 2015)...............................................................3

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012).............................................................................5, 6, 7, 17

*Mortg. Grader, Inc. v. First Choice Loan Serv. Inc.*,
811 F.3d 1314 (Fed. Cir. 2016)................................................................................8

*Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*,
2015 U.S. Dist. LEXIS 116647 (D. Del. Sep. 2, 2015) .........................................12

*OIP Techs., Inc. v. Amazon, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015)................................................................................5

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
848 F.2d 414, 416 n.3 (3d Cir. 1988 ......................................................................4

*Parus Holdings, Inc. v. Sallie Mae Bank*,
137 F. Supp. 3d 660 (D. Del. 2015).................................................................2, 15

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
2017 U.S. App. LEXIS 11163 (Fed. Cir. June 23, 2017) ......................................18

*In re Salwan*,
681 F. App'x 938 (Fed. Cir. 2017) .........................................................................17

*Smartflash LLC v. Apple, Inc.*,
680 F. App'x 977 (Fed. Cir. 2017) .........................................................................19

*TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*,
657 F. App'x 991 (Fed. Cir. 2016) ............................................................8, 15, 17

iii

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) ................................................................8, 9, 11, 17

*TriDim Innovations LLC v. Amazon.com, Inc.*,
    207 F. Supp. 3d 1073, 1079 (N.D. Cal. 2016) ........................................................14

*TriPlay, Inc. v. WhatsApp Inc.*,
    2015 U.S. Dist. LEXIS 55068 (D. Del. Apr. 28, 2015) ......................................2, 16

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ..........................................................................11, 12

*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*,
    635 F. App'x 914 (Fed. Cir. 2015) ..........................................................................8

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
    793 F. 3d. 1306 (Fed. Cir. 2015) ............................................................................18

*VideoShare, LLC v. Google, Inc.*,
    2016 U.S. Dist. LEXIS 100860 (D. Del. Aug. 2, 2016) ....................................16, 19

**Statutes**

35 U.S.C. § 101 ........................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(c) ..........................................................................................1, 4, 5

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| HP | HP Inc. |
| OpenPrint or Plaintiff | OpenPrint LLC |
| The complaint | D.I. 1 |
| The '601 patent | U.S. Patent No. 8,547,601 |

Defendant HP Inc. ("HP") hereby moves under Fed. R. Civ. P. 12(c) for judgment on the pleadings that the asserted claims of U.S. Pat. No. 8,547,601 (the "'601 patent) are directed to patent-ineligible subject matter under 35 U.S.C. § 101.

## INTRODUCTION

The asserted claims of the '601 patent are directed to an abstract process that invokes computers merely as tools to automate a human activity—namely, moving a document from one format (facsimile) to another (e-mail). Far from being an inventive concept, this is simply a routine business practice in common use since the advent of the computer age. As the '601 patent readily admits, "[t]he popularity of the quick and easy facsimile delivery of messages and the popularity of low cost delivery of messages via electronic mail … have for *quite some time* enticed attempts to mingle the two technologies." '601 patent at 1:35-41 (emphasis added). One such "early attempt to mingle facsimile and Email message delivery technologies" was an "E-mail system to route a facsimile file between controllers associated with the E-mail network" (*id*. at 1:43-48); another was a "system where a data communication center and a facsimile mail center are linked in a manner to accomplish the delivery of E-mail messages by way of facsimile" (*id*. at 1:54-58). The structures recited in the asserted claims are no different than those employed in the applicant-admitted prior art; and the recited processes are conceptually identical to those used by humans when manually moving *any* document from one format to another. As the Supreme Court made clear in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), implementing a conventional process within a generic computer environment cannot save the asserted claims from being abstract.

Many courts have concluded that the idea of moving a document from one format to another is patent-ineligible. The asserted '601 patent claims fall into a familiar class of claims

1

directed to a patent-ineligible concept—data collection, analysis, and publication.  For example, the Federal Circuit has invalidated claims that involved receiving and recognizing data from a fax (*Content Extraction*, citations *infra*), and converting a document from one file format to another before transmitting the formatted file electronically (*EasyWeb Innovations*).  Similarly, Courts in this District have struck down claims involving "receiving messages via a phone or Internet connection and then transmitting those messages to a subscriber by phone or Internet" (*Parus Holdings*), "converting and forwarding messages, so that the messages are sent in a format and layout in which they can be received by a recipient" (*TriPlay*), and "converting a multimedia message into a common format—an email message—for sending to another party and then converting the received common format back into [a] multimedia message" (*T-Mobile*).

The asserted claims are not saved by their recitation of conventional computer hardware for performing routine computer functions.  Generic and functionally-defined limitations such as "apparatus," "facsimile device," and "e-mail server" fail to add "significantly more" to the patent-ineligible concept of moving a document from one format (facsimile) to another (e-mail).  Under 35 U.S.C. § 101 and the overwhelming weight of case law both before and after *Alice*, the asserted '601 patent claims are patent-ineligible as a matter of law.

## NATURE AND STAGE OF THE PROCEEDINGS

OpenPrint LLC filed this action for alleged infringement of three patents—U.S. Patent Nos. 6,209,993 (the "'993 patent"), 8,547,601 (the "'601 patent"), and 6,717,699 (the "'699 patent").  As shown below, the asserted '601 patent claims are ineligible under 35 U.S.C. § 101, and as such, Count II of the Complaint should be dismissed.[1]

---

[1] HP believes that proceeding toward trial on the '993 and '699 patents alone during the pendency of this motion would unnecessarily consume the parties' and public's

## SUMMARY OF ARGUMENT

1.      The asserted claims of the '601 patent are ineligible under 35 U.S.C. § 101 because they are directed to an abstract idea—moving a document from one format (facsimile) to another (e-mail)—and lack an inventive concept sufficient to transform the claims into a patent-eligible application of that abstract idea.

## STATEMENT OF FACTS

On August 3, 2017, OpenPrint filed a complaint alleging, among other things, that HP infringed claims 6, 8, 9, and 10 of the '601 patent.  D.I. 1, Compl. at ¶¶ 7, 24-30.  The '601 patent, titled "Facsimile to Email Communication System," describes a purported invention, implemented in software on a computer environment, for delivering a fax to an e-mail address. D.I. 1, Ex. C (the "'601 patent") at Abstract, 2:8-19, 2:46-49.

Asserted claim 6 is representative of the claimed invention.  It recites "computer executable instructions"—*i.e.*, software—for delivering a fax to an e-mail address:

> 6. A non-transitory computer-readable storage medium having stored thereon computer executable instructions that, if executed by an apparatus, cause the apparatus to perform operations comprising:
>
> > receiving facsimile information from a facsimile device;
> >
> > receiving, in an alphanumeric form from the facsimile device, a destination e-mail address to which the facsimile information is to be sent

---

resources.  Instead, the three stay factors weigh in favor of granting a stay:  (1) it will simplify the issues for trial by resolving a case-dispositive issue as to all asserted claims of one patent-in-suit; (2) this litigation is in its infancy—*i.e.*, the Court has not held a case management conference or set a trial date, and discovery has not started; and (3) OpenPrint will not suffer any undue prejudice from delay or otherwise suffer an undue tactical disadvantage due to a stay because OpenPrint and HP are not competitors in the marketplace. *See Kaavo Inc. v. Cognizant Tech. Sol. Corp.*, 2015 WL 1737476, at *5 (D. Del. Apr. 9, 2015) (staying case pending resolution of motion to dismiss under § 101).  HP intends to raise these issues in its Joint Status Report.

> interpreting the destination e-mail address from the alphanumeric form;
>
> converting the received facsimile information into a computer readable image file;
>
> composing an e-mail message with the computer readable image file as an attachment to be sent to the destination e-mail address;
>
> transmitting the e-mail message to an e-mail server associated with the received destination e-mail address.

*Id*. at 24:5-22.

The remaining asserted '601 patent claims all depend directly from independent claim 6. Claim 8 requires that the apparatus receive the destination email address "from a user interface including an alphanumeric keypad" of the facsimile device (*id*. at 24:27-30); claim 9 requires that the facsimile information be converted into "a TIFF format image file," (*id*. at 24:31-34); and claim 10 requires that the facsimile information be converted into "one of the following formats: JPEG, GIF, PCX, DCX, BMP, PNG, or AWD" (*id*. at 24:35-39).

## LEGAL STANDARDS

### I.    Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  When evaluating a motion for judgment on the pleadings, the Court must accept all factual allegations in a complaint as true and view them in the light most favorable to the non-moving party. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008).  In considering a Rule 12(c) motion, "[t]he Court may also take judicial notice of the factual record of a prior proceeding." *Data Engine Techs., LLC v. Google Inc.*, 211 F. Supp. 3d 669, 674 (D. Del. 2016) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988)).

Validity under 35 U.S.C. § 101 is a question of law. *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd Bilski v. Kappos*, 561 U.S. 593 (2010).  Where, as here, the patent's claims are directed to non-patentable subject matter, that question is properly addressed through a motion for judgment on the pleadings under Rule 12(c). *See, e.g., buySAFE v. Google Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (affirming this Court's dismissal of patent claims based on 12(c) motion on § 101 grounds); *see also Intellectual Ventures I LLC v. AT&T Mobility LLC*, C.A. No. 12-193-LPS et al., 2016 WL 7491806, at *2 (D. Del. 2016) (citing *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008)); *OIP Techs., Inc. v. Amazon, Inc.*, 788 F.3d 1359, 1360 (Fed. Cir. 2015).

## II.     Patentable Subject Matter Under 35 U.S.C. § 101

Patentable subject matter extends to "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.  The Supreme Court, however, has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 134 S. Ct. at 2354.  Claims are ineligible if their elements, separate from the abstract idea, are merely "well understood, routine, conventional activity already engaged in by" others in the relevant field. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012).

Determining whether a patent claim is directed to patent-ineligible subject matter involves two steps: First, the court determines "whether the claims at issue are directed to [a] patent-ineligible concept[]." *Alice*, 134 S. Ct. at 2355.  The court "typically refer[s] to step one as the 'abstract idea' step." *Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017).  In the "abstract idea" step, the court ***evaluate[s] 'the focus of the claimed advance over the prior art'*** to determine if the claim's 'character as a whole' is directed to excluded subject matter.'" *Id.* (*quoting Affinity Labs of Tex., LLC v. DIRECTTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)) (emphasis added).  Second, if the claim contains

such a patent-ineligible concept, the court evaluates whether the claim includes any meaningful limitations that amount to an "inventive concept, *i.e.,* an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice,* 134 S. Ct. at 2355.  In the "inventive concept" step, the court "***look[s] with more specificity at what the claim elements add***, in order to determine whether they identify an inventive concept in the application of the ineligible subject matter to which the claim is directed." *IV I*, 850 F.3d at 1338 (emphasis added).

Transforming an abstract idea into a patent-eligible application requires "more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'"  *Mayo*, 132 S. Ct. at 1294. A patent must limit its reach to a particular, inventive application of the law or idea.  *Id*. at 1290. In addition, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity, such as identifying a relevant audience, category of use, field of use, or technological environment.  *See Bilski*, 561 U.S. at 610-12 ("[L]imiting an abstract idea to one field of use … [does] not make the concept patentable").  Moreover, "simply appending conventional steps, specified at a high level of generality, to … abstract ideas cannot make those … ideas patentable." *Mayo*, 132 S. Ct. at 1301.

## ARGUMENT

### I.  *Alice* Step One: The Asserted Claims Are Directed to an Abstract Idea

Step one of the *Alice* analysis asks "whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355.  Here, the asserted '601 patent claims are directed to the abstract idea of moving a document from one format (facsimile) to another (e-mail).

### A. The Asserted Claims Are Directed to Delivering a Fax to an E-mail Address

All asserted claims of the '601 patent are directed to delivering a fax to an e-mail address.

Asserted claim 6—from which the remaining asserted claims depend—recites "computer executable instructions"—*i.e.*, software—for delivering a fax to an e-mail address:

> 6. A non-transitory computer-readable storage medium having stored thereon computer executable instructions that, if executed by an apparatus, cause the apparatus to perform operations comprising:
>
> > receiving facsimile information from a facsimile device;
> >
> > receiving, in an alphanumeric form from the facsimile device, a destination e-mail address to which the facsimile information is to be sent
> >
> > interpreting the destination e-mail address from the alphanumeric form;
> >
> > converting the received facsimile information into a computer readable image file;
> >
> > composing an e-mail message with the computer readable image file as an attachment to be sent to the destination e-mail address;
> >
> > transmitting the e-mail message to an e-mail server associated with the received destination e-mail address.

'601 patent at 24:5-22.   These instructions boil down to performing three basic functions: (1) data collection (*e.g.*, receiving a fax and an e-mail address); (2) analysis (*e.g.*, interpreting the e-mail address from alphanumeric form); and (3) publication (*e.g.*, converting the fax into a digital image, attaching the digital image to an e-mail message, and transmitting the e-mail message).

Distilled to its "simplest form," claim 6 merely describes the basic idea of delivering a fax to an email address.  *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (describing *Mayo* has having "distilled this ineligible concept from the claims");

*Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333-34 (Fed. Cir. 2012) (distilling claim limitations down to their "simplest form").

That claim 6 implements this software in an "apparatus" or other physical computer devices is "beside the point." *Alice*, 134 S. Ct. at 2358-59.  It is well-settled that claims "cannot escape[] the reach of the abstract-idea inquiry" by merely "recit[ing] concrete, tangible components*." In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (rejecting claims where "the recited physical components merely provide a generic environment in which to carry out [an] abstract idea."); *see also, e.g.*, *Mortg. Grader, Inc. v. First Choice Loan Serv. Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (claims reciting an "interface," "network," and "database" were directed to an abstract idea).  As such, "[m]erely stating that the methods at issue are performed on already existing [] equipment, without more, does not save the claims from abstraction." *Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, 635 F. App'x 914, 919 (Fed. Cir. 2015); *see also, e.g., Elec. Pwr. Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351-52 (Fed. Cir. 2016) (claims abstract despite performing method on physical "power grid" system); *TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*, 657 F. App'x 991, 992 (Fed. Cir. 2016) (claims abstract despite reciting step of "receiving mechanical and hydraulic data" from "sensors deployed on the oil well.").

Claim 6 is no exception.  The claimed "apparatus" is nothing more than a generic and functionally-defined term.  As claimed, the apparatus encompasses any computer hardware capable of performing the operations recited by the claim—namely*,* the routine and conventional steps for delivering a fax to an e-mail address.  This includes the prior-art methods of receiving a fax from a facsimile device ('601 patent at 5:22-33) and a destination email address in alphanumeric form (*id*. at 21:23-35, 10:29-40), the prior-art method of identifying the destination email address in alphanumeric form (*id*. at 21:54-22:2), the prior-art method of converting that fax into "industry-standard formats for images" (*id*. at 7:16-24; 19:10-16), the prior art method of

attaching an image to an e-mail message (*id*. at 19:22-33), and the prior art method of sending an email message with an attachment (*id*. at 19:34-40).  *See also id.* at 1:30-58 (disclosing "early attempt[s] to facsimile and Email message delivery technologies," including a prior art "system where a data communication center and a facsimile mail center are linked in a manner to accomplish the delivery of E-mail messages by way of facsimile").  This recitation of conventional technology in functional terms demonstrates that claim 6 is directed not "to a specific improvement to computer functionality," but to the abstract idea itself.  *See In re TLI*, 823 F.3d at 611-613; *Elec. Pwr. Grp.*, 830 F.3d at 1356 ("[T]he essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101.").  Put differently, "the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools."  *Elec. Pwr. Grp.*, 830 F.3d at 1354; *Capital One Bank (USA)*, 792 F.3d at 1370 (holding that a description of generic computing components with an instruction to do nothing more than "apply [the abstract concept] on a computer" does not confer patent eligibility).

The other recited computer devices are likewise generic and defined in purely functional terms.  As the '601 patent acknowledges, the "facsimile device" may include a "conventional stand alone fax machine." '601 patent at 4:26-28 (describing this element as "a standard fax device 106 (for example, conventional stand alone fax machine or multifunctional machine with fax capabilities)"), 5:13-17 ("fax devices 106 includes any fax-capable device, including … conventional facsimile machines, multi-functional machines which can operate as fax machines, or image scanners which can operate as fax sending devices.").  And just like conventional fax machines, the claimed facsimile device performs the prior-art method of sending facsimile information to another computer device.  *Id*. at claim 6; 5:22-33.

The same is true of the "e-mail server."  According to the '601 patent, the e-mail server is a standard computer using commercially available network hardware, specific examples of which are given, and "considered readily understood by those skilled in the art."  *Id*. at Fig. 3, 7:51-8:31 (the server may include "a model 1400FXSA modem available from Practical Peripherals, Inc.," a "model SMC9332DST available from Standard Microsystems Corporation . . ., which is compatible with the 100Base T Ethernet standard," and ""Microsoft Exchange Mail" or "UNIX SENDMAIL" operating on the CPU 206"); *see also id.* at 8:2-10 (describing the components of Figure 3, which mirror those of the fax server in Figure 2, as "being configured and inter-operating in a manner that will be clearly understood by one skilled in the art"), 8:28-31 ("Further explanation of the E-mail Server 112 is deemed not necessary as the appropriate hardware, software and operation thereof is considered well known to those skilled in the art."). And just like conventional computer servers, the claimed e-mail server performs the prior-art methods of receiving e-mails with attachments and routing those emails to the designated e-mail address. *Id*. at 7:62-8:2 (email server performs "functions of receiving the addressed E-mail with attachment (the E-mail message 270) and routing the E-mail message to the appropriate network address along the E-mail network 116, using, for example, TCP/IP and appropriate domain addressing and domain name services").

Setting aside these conventional and functionally-defined computer devices, the only remaining limitations are the abstract instructions for performing the recited steps for delivering a fax to an e-mail address.  In *Alice*, the claims involved "administering digital images" using a "telephone unit" and "server," but were found to be directed to the abstract idea of "classifying and storing digital images in an organized manner."  *Alice*, 134 S. Ct. at 2357.  *See also Affinity Labs*, 838 F.3d at 1261 (claims reciting a "cellular telephone," "customized user interface," and

"broadcasting system" were nonetheless directed to the abstract idea of "providing out-of-region access to regional broadcast content"). Thus, once "stripped of excess verbiage," claim 6 is directed to nothing more than the concept of delivering a fax to an e-mail address.

The remaining asserted claims—all of which depend from claim 6—are likewise directed to delivering a fax to an email address. The only difference between claim 6 and the asserted dependent claims is *where* the apparatus receives the destination email address from (claim 8) and *what* file format the facsimile information is converted into (claims 9 and 10). But such field-use-of restrictions are "insufficient to save [the] claim." *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014). As the Supreme Court has made clear, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S. Ct. at 2358; *Bilski*, 561 U.S. at 610-12 (same); *see also, e.g.*, *In re TLI*, 823 F.3d at 613 ("[A]lthough the claims limit the abstract idea to a particular environment—a mobile telephone system—that does not make the claims any less abstract."). The same is true here.

In any event, the asserted dependent claims merely add routine, non-inventive processes for accomplishing the basic idea "at the heart of the claims," namely, delivering a fax to an email address. *See Ultramercial*, 772 F.3d at 712-14 ("Adding additional steps such as updating an activity log, requiring a request from the consumer to view the ad, restrictions to public access, and the use of the internet does not transform an otherwise abstract idea patent-eligible subject matter."). Claim 8, for instance, requires that the apparatus receive the destination email address "from a user interface including an alphanumeric keypad" of a facsimile device. '601 patent at 24:26-29. But as the '601 patent admits, such user interfaces were well known in the art. *See, e.g.*, *id*. at 20:47-51 (describing how the integrated embodiment uses the existing keypad and

11

display on the conventional fax machine), 10:21-23 (describing an embodiment "comprising a standard telephony-styled DTMF keypad and custom control buttons.").

Claims 9 and 10 fare no better.  Although claim 9 requires that the facsimile information be converted into "a TIFF format image file," (*id*. at 24:31-34), and claim 10 requires that the facsimile information be converted into "one of the following formats: JPEG, GIF, PCX, DCX, BMP, PNG, or AWD," (*id*. at 24:35-39), the '601 patent makes clear that the claimed formats are merely "one of several industry-standard formats for images," (*id*. at 7:16-24 ("The Fax-Server 110 … converts the fax image data to image data (hereinafter sometimes referred to as the "formatted image data") formatted in any one of several industry-standard formats for images or bit-mapped graphic images, including, for example and not limitation, formats such as 'GIF' 'PCX', 'DCX' 'TIFF', and 'BMP', 'JPEG', 'PNG', 'AWD'.")).  While these claims "add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea" of delivering a fax to an email address.  *See Ultramercial*, 772 F.3d at 715.

### B.  Delivering a Fax to an E-mail Address Is an Abstract Idea

At their core, the asserted '601 patent claims are directed to delivering a fax to an email address—one form of the well-known business practice of moving a document from one format (facsimile) to another (e-mail).  That idea is not meaningfully different from those found to be abstract in other cases involving receiving and recognizing data from a fax (*see Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014)), and converting information from one digital file format to another before transmitting the formatted file electronically (*see EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x 969 (Fed. Cir. 2017)).  *See also Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*, 2015 U.S. Dist. LEXIS 116647, at *9-10 (D. Del. Sep. 2, 2015) (holding that claims relating to converting a message from one media to another to be directed to the abstract idea of "translation").

The Federal Circuit's decision in *Content Extraction* is controlling.  There, the asserted claims recited a three-step "method of processing information," comprising:

(1) ***receiving facsimile information from a facsimile device*** receiving output representing a diversity of types of hard copy documents from an automated digitizing unit and storing information from said diversity of types of hard copy documents into a memory, said information not fixed from one document to the next, said receiving step not preceded by scanning, via said automated digitizing unit, of a separate document containing format requirements;

(2) ***recognizing portions of said hard copy documents*** corresponding to a first data field; and

(3) storing information from said portions of said hard copy documents corresponding to said first data field into memory locations for said first data field.

*Content Extraction*, 776 F.3d at 1345 (emphasis added).  As asserted by the patentee, "[t]his method can be performed by software on an automated teller machine (ATM) that recognizes information written on a scanned check, such as the check's amount, and populates certain data fields with that information in a computer's memory."  *Id*. at 1345.  Applying *Alice* step one, the Federal Circuit found that the asserted claims were "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory."  *Id*. at 137.  In finding the claims abstract, the court held that "[t]he concept of data collection, recognition, and storage is undisputedly well-known" as "humans have always performed these functions," noting that bank tellers "have, for some time, reviewed checks, recognized relevant data such as the amount, account number, and identity of account holder, and stored that information in their records."  *Id*.

The same reasoning applies here.  Just like *Content Extraction*, the asserted '601 patent claims recite a concept that is "undisputedly well-known," that is, moving a document from one format (facsimile) to another (e-mail).  *See* '601 patent at 1:43-58.  And just like *Content*

*Extraction*, humans have always performed this well-known concept manually using nothing more than generic computer equipment. *See e.g., TriDim Innovations LLC v. Amazon.com, Inc.*, 207 F. Supp. 3d 1073, 1079 (N.D. Cal. 2016) ("[T]he patents represent nothing more than the abstract idea of placing more frequently used documents in a space that is more easily accessible—an organizational system people intuitively use in a variety of contexts.").

Indeed, the asserted claims use software to do *precisely* what receptionists have done since the advent of the Internet. Consider, for example, a law firm receptionist named Alice who receives an urgent fax addressed to an attorney at the law firm who called in sick that day. At the attorney's request, Alice needs to send him the fax by e-mail. As shown in the chart below, Alice can move the fax message to e-mail by performing each and every operation of the claimed apparatus using only a generic fax machine, computer, and scanner:

| Independent Claim 6 | Corresponding Action |
|---|---|
| "receiving facsimile information from a facsimile device;" | Alice receives a fax from a fax machine; |
| "receiving, in an alphanumeric form from the facsimile device, a destination e-mail address to which the facsimile information is to be sent;" | Alice reads the fax cover sheet that lists the e-mail address of the attorney in alphanumeric form (*e.g.*, firstname.lastname@lawfirm.com); |
| "interpreting the destination e-mail address from the alphanumeric form;" | Alice identifies the e-mail address, e.g., from the "@" symbol; |
| "converting the received facsimile information into a computer readable image file;" | Alice scans the fax using a scanner connected to a computer and saves the scanned image of the fax as a "JPEG" file on the computer; |
| "composing an e-mail message with the computer readable image file as an attachment to be sent to the destination e-mail address;" | Using an e-mail application on the computer, Alice creates a new e-mail message, types the attorney's e-mail address into the "To" field of the e-mail message, and manually attaches the "JPEG" file to the e-mail message; |
| "transmitting the e-mail message to an e-mail server associated with the received destination e-mail address." | Alice sends the e-mail message. |

That humans cannot mentally perform those claimed computer functions is irrelevant. *Content Extraction*, 776 F.3d at 1347 (rejecting argument that "the claims are not drawn to an abstract

idea because human minds are unable to process and recognize the stream of bits output by a scanner," noting that "the claims in *Alice* also required a computer that processed streams of bits, but nonetheless were found to be abstract."); *Compression Techs. Solutions LLC v. EMC Corp.*, 2013 WL 2368039, at *5 (N.D. Cal. May 29, 2013) (rejecting argument that "if digital data is required, the human mind cannot utilize or comprehend it").

Moreover, the Federal Circuit has consistently found that claims akin to the asserted '601 patent claims "fall into a familiar class of claims directed to a patent-ineligible concept"—that is, "claims involving ***data collection***, ***analysis***, and ***publication***." *EasyWeb Innovations,* 689 F. App'x at 971 (holding that claims on a "message publishing system" that required "convert[ing] at least a second portion of the message from the first format to a second format" before "publish[ing] the converted second portion of the message" on the internet were directed to the abstract idea of "receiving, authenticating, and publishing data," and affirming determination of ineligibility) (emphasis added); *Elec. Pwr. Grp.*, 830 F.3d at 1353 (holding that "collecting information, analyzing it, and displaying certain results of the collection and analysis" are "a familiar class of claims 'directed to' a patent-ineligible concept"); *TDE*, 657 F. App'x at 993 (same); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) (same).

The asserted '601 patent claims are no different; they recite a process that falls squarely within this "familiar class" of patent-ineligible claims: ***data collection*** (*e.g.*, receiving a fax and a destination e-mail address), ***analysis*** (*e.g.*, interpreting the received e-mail address), and ***publication*** (*e.g.*, converting the fax into digital image and sending to the e-mail address as an attachment). Courts in this District have found claims reciting nearly-identical processes to be abstract, including "receiving messages via a phone or Internet connection and then transmitting those messages to a subscriber by phone or Internet" (*Parus Holdings, Inc. v. Sallie Mae Bank*,

137 F. Supp. 3d 660 (D. Del. 2015)), "converting a multimedia message into a common

format—an email message—for sending to another party and then converting the received

common format back into [a] multimedia message" (*IV I LLC v. T-Mobile USA, Inc.*, 2017 U.S.

Dist. LEXIS 134551, at *27 (D. Del. Aug. 23, 2017)), and "converting and forwarding messages,

so that the messages are sent in a format and layout in which they can be received by a recipient"

(*TriPlay, Inc. v. WhatsApp Inc.*, 2015 U.S. Dist. LEXIS 55068, at *39 (D. Del. Apr. 28, 2015))

*adopted by* 2015 U.S. Dist. LEXIS 104373 (D. Del. Aug. 10, 2015).

The asserted '601 patent claims are also abstract because they fail to recite "any

particular assertedly inventive technology for performing those functions." *Elec. Pwr. Grp.*, 830

F.3d at 1354-56.  Nor do they recite any particular "improvement in computer functionality."

*VideoShare, LLC v. Google, Inc.*, 2016 U.S. Dist. LEXIS 100860, at *16 (D. Del. Aug. 2, 2016).

Although the '601 patent purports to disclose an improved fax-to-email system, it never discloses

any improved means for unifying these two "traditionally distinct message delivery systems."

'601 patent at 1:30-34.   Nowhere does the '601 patent explain *how* the apparatus interprets the

received e-mail address from alphanumeric form, or *how* it converts the fax into a computer-

readable image file, beyond the use of generic computer hardware.  *See Carilogic, Inc. v.*

*FormFree Holdings Corp.*, 681 F. App'x 950, 954 (Fed. Cir. 2017) ("[A] method for collection,

analysis, and generation of information reports, where the claims are not limited to *how* the

collected information is analyzed or reformed, is the height of abstraction.") (emphasis added);

*Intellectual Ventures I LLC v. Erie Indem.*, 850 F.3d 1315, 1328 (Fed. Cir. 2017) (claims abstract

where they were "not focused on *how* the usage of XML tags alters the database") (emphasis in

original); *VideoShare*, 2016 U.S. Dist. LEXIS 100860, at *21-22 (claims abstract where they

"d[id] not specify *how* [the claimed] tasks are completed") (emphasis in original).  But even if

the '601 patent had disclosed a solution (which it did not), no such solution is required by the claims. *See DealerTrack*, 674 F.3d at 1334.

In short, the asserted claims are "the sort of data gathering and processing claim[s] that [are] directed to an abstract idea under [*Alice*] step one." *TDE*, 657 F. App'x at 993.

## II. *Alice* Step Two: The Asserted Claims Lack an Inventive Concept

The asserted claims of the '601 patent do not recite any "additional features" that constitute an "inventive concept"—*i.e.*, "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 134 S. Ct. at 2355 (internal quotation marks, alteration and citation omitted). None of the claim limitations add "something more" to "transform" the abstract idea into a "patent-eligible application" of that idea. *Id.*

As explained above, the asserted '601 patent claims do not require any novel or specialized computer hardware. To the contrary, the structures recited in those claims—an "apparatus," "facsimile device," and "e-mail server"—are admittedly generic and commonly-used computer hardware that execute nothing more than "well-understood, routine, and conventional activities." *Mayo*, 132 S. Ct. at 1298; *In re TLI,* 823 F.3d at 615 ("[V]ague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention"); *In re Salwan*, 681 F. App'x 938, 941 (Fed. Cir. 2017) ("the claimed elements of a generic 'network,' 'computer program,' 'central server,' 'device,' and 'server for processing and transferring' are simply not enough to transform the abstract idea into a patent-eligible invention."). Put differently, "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Elec. Pwr. Grp.*, 830 F.3d at 1355; *In re TLI*, 823 F.3d at 612 ("The specification does not describe a new

17

telephone, a new server, or a new physical combination of the two.").   As the Federal Circuit has explained, "a claim directed to an abstract idea does not move into section 101 eligibility by merely requir[ing] generic computer implementation." *buySafe*, 765 F.3d at 1354; *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F. 3d. 1306, 1327 (Fed. Cir. 2015) ("The presence of a general purpose computer to facilitate operations through uninventive steps does not change the fundamental character of an invention.").   The claims here are decidedly not the exception to that rule.   The claims merely graft generic computer hardware onto otherwise-ineligible processes.

Nor do the asserted claims contain any arguably inventive computer features.   Quite the opposite; the claims merely recite those conventional computer functions that are routinely applied to all data collection, analysis, and publication. *See, e.g., buySAFE,* 765 F.3d at 1355 (describing computer program for receiving and sending information over a network as "not even arguably inventive").   Nothing in the claims "produces 'a result that overrides the routine and conventional' use of [these] known feature[s]." *Prism Techs. LLC v. T-Mobile USA, Inc.*, 2017 U.S. App. LEXIS 11163, at *5-8 (Fed. Cir. June 23, 2017).   Instead, the asserted claims merely "stat[e] [the relevant] functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology." *Elec. Pwr. Grp.*, 830 F.3d at 1351.   As such, the '601 patent claim limitations recite nothing more than moving a document from one electronic format (facsimile format) to another (e-mail format)—*i.e.*, the abstract idea itself. *See EasyWeb*, 2017 U.S. App. LEXIS 8436 at *5 (holding claim lacked inventive concept where "[t]he elements of [the claim] simply recite an abstract idea or an abstract idea executed using computer technology").

The asserted '601 patent claims invoke computers only to automate a process that could otherwise be performed manually using conventional technology (*see*, *supra*, Section I.B.),

which is insufficient to impart patent eligibility.  *See VideoShare,* 2016 U.S. Dist. LEXIS 100860, at *19 (finding claims ineligible where they used a "general purpose computer" to "automat[e] a sequence of known steps using conventional technology so that a human is not burdened with various manual steps").  Nor can "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [] provide a sufficient inventive concept." *Capital One Bank (USA)*, 792 F.3d at 1367; *see also Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, 2017 WL 3188451, at *3 (Fed. Cir. July 27, 2017) ("[A]dd[ing] computer functionality and recit[ing] use of the Internet to increase the speed and efficiency of an abstract process" is "not enough"); *Elec. Pwr. Grp.*, 830 F.3d at 1355 ("Merely requiring the selection and manipulation of information—to provide a 'humanly comprehensible' amount of information useful for users—by itself does not transform the otherwise-abstract processes of information collection and analysis."); *Blackbird Tech LLC v. Advanced Discovery, Inc.*, 2017 WL 2734725, at *4 (D. Del. June 6, 2017) ("Using a generic computer, however, to solve a volume problem related to search results is a patent-ineligible subject, particularly when the patent lacks specific limitations to address the volume problem.").

The limitations recited in the dependent claims fail to supply an inventive concept for the same reasons.  Claim 8 adds a limitation that the apparatus receives the destination email address from a "user interface" that was admittedly well-known in the art.  *See* '601 patent at 10:21-23, 20:47-51.  But as the Federal Circuit has explained, "the use of generic computer elements like a microprocessor or user interface do not alone transform an otherwise abstract idea into patent-eligible subject matter."  *FairWarning IP,* 839 F.3d at 1096 (claims requiring a "user interface" lacked an inventive concept); *Affinity Labs*, 838 F.3d at 1261 (claims requiring a "customized user interface" lacked an inventive concept); *Smartflash LLC v. Apple, Inc.*, 680 F. App'x 977,

984 (Fed. Cir. 2017) (claims requiring an "interface" lacked an inventive concept).  And while claims 9 and 10 add limitations that the fax be converted into a particular image file format, the '601 patent admits that the recited formats are all "industry-standard formats for images or bit-mapped graphic images."  '601 patent at 7:16-24.

In sum, the asserted claims of the '601 patent are directed to the abstract idea of moving a fax to an email and contain no inventive concept that transforms them into a patent-eligible application of that idea.  Accordingly, the asserted '601 patent claims are invalid under § 101 for claiming patent-ineligible subject matter.

## CONCLUSION

For the foregoing reasons, HP respectfully requests that the Court find the asserted claims of the '601 patent invalid under 35 U.S.C. §101.

OF COUNSEL:

Rick L. Rambo
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5005
Tel: (713) 890-5000
rick.rambo@morganlewis.com

Jason E. Gettleman
MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 843-4000
jason.gettleman@morganlewis.com

Dated: October 19, 2017

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Amy M. Dudash*

Amy M. Dudash (No. #5741)
The Nemours Building
1007 N. Orange Street, Suite 500
Wilmington, DE 19801
Tel: (302) 547-7293
amy.dudash@morganlewis.com

*Attorneys for Defendant HP Inc.*