**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| OPEN PRINT, LLC,<br><br>         Plaintiff,<br><br>  v.<br><br>HP INC.,<br><br>         Defendant. | C.A. No. 17-1077-GMS<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS
<u>THAT U.S. PATENT NO. 8,547,601 IS INVALID UNDER 35 U.S.C. § 101</u>**

**TABLE OF CONTENTS**

I.   NATURE AND STAGE OF PROCEEDINGS ................................................................... 1

II.   INTRODUCTION ........................................................................................................... 1

III.   BACKGROUND OF THE INVENTION ....................................................................... 1

IV.   LEGAL AUTHORITIES ................................................................................................ 3

   A.   Fed. R. Civ. P. 12(c) ................................................................................................ 3

   B.   35 U.S.C. § 101 ....................................................................................................... 4

      1.   Whether the Claims are Directed Towards Excluded Matter ..................... 4

      2.   Whether the Claims Contain an Inventive Concept .................................... 6

V.   ARGUMENT .................................................................................................................. 7

   A.   The Asserted Claims of the '601 Patent are Patent Eligible ................................... 7

      1.   The Asserted Claims are not Directed to an Abstract Idea .......................... 7

      2.   The '601 Patent Claims Contains an Inventive Concept ........................... 11

      3.   If Defendant's Motion isn't Denied Outright, the Claims Should Be Construed Prior to Adjudication ................................................................................................ 14

VI.   CONCLUSION ............................................................................................................. 15

# **TABLE OF AUTHORITIES**

Cases

*Affinity Labs of Tex. v. DIRECTV, LLC*
   838 F.3d 1253 (Fed. Cir. 2016) .................................................................................... 10
*Cardio-Medical Associates, Ltd. v. Crozer-Chester Medical Ctr.*
   536 F. Supp. 1065 (E.D. Pa. 1982). ................................................................................ 3
*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986). ....................................................................................................... 4
*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n.*
   776 F.3d 1343 (Fed. Cir. 2014) .................................................................................. 6, 9
*DDR Holdings, LLC v. Hotels.com, L.P.*
   773 F.3d 1245 (Fed. Cir. 2014) .................................................................................. 5, 8
*Diamond v. Diehr*
   450 U.S. 175 (1981) ..................................................................................................... 5, 6
*EasyWeb Innovations, LLC v. Twitter, Inc.*
   689 F. App'x 969 (Fed. Cir. 2017) ............................................................................... 11
*Elec. Power Grp., LLC v. Alstom S.A.*
   830 F.3d 1350 (Fed. Cir. 2016) .................................................................................... 10
*Garfum.com Corp. v. Reflections by Ruth*
   2016 U.S. Dist. LEXIS 174134 (D.N.J. Dec. 16, 2016) ............................................... 2
*Green v. Fund Asset Mgmt., L.P.*
   245 F.3d 214 (3d Cir. 2001) ........................................................................................... 3
*In re General Motors Class E Stock Buyout Sec. Litig.*
   694 F. Supp. 1119 (D. Del. 1988). ................................................................................. 3
*Intellectual Ventures I LLC v. Capital One Bank (USA)*
   792 F.3d 1363 (Fed. Cir. 2015) .................................................................................... 10
*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*
   C.A. No. 13-1632-LPS, 2017 U.S. Dist. LEXIS 134551 (D. Del. Aug. 23, 2017) ................... 11
*Jablonski v. Pan Am. World Airways, Inc.*
   863 F.2d 289 (3d Cir. 1988) ........................................................................................... 3
*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*
   11 F.3d 399 (3d Cir. 1993) ............................................................................................. 3
*McRO, Inc. v. Bandai Namco Games Am. Inc*.
   837 F.3d 1299 (Fed. Cir. 2016) .................................................................................... 14
*Meetrix IP, LLC v. Citrix Sys. et al.*
   Case No. 1-16-CV-1033 (W.D. Tex.,July 27, 2017) .................................................... 13
*Mortg. Grader, Inc. v. First Choice Loan Serv. Inc.*
   811 F.3d 1314 (Fed. Cir. 2016) .................................................................................. 9, 10
*Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*
   Civil Action No. 14-612-RGA, 2015 U.S. Dist. LEXIS 116647 (D. Del. Sep. 2, 2015). ........ 11
*Parus Holdings, Inc. v. Sallie Mae Bank*
   137 F. Supp. 3d 660 (D. Del. 2015) ............................................................................. 11

*Rapid Litigation Management Ltd. v. CellzDirect, Inc.*
   827 F.3d 1042 (Fed. Cir. 2016)...................................................................................... 6
*Sciele Pharma Inc. v. Lupin Ltd.*
   684 F.3d 1253 (Fed Cir. 2012)........................................................................................ 2
*Southmark Prime Plus, L.P. v. Falzone*
   776 F. Supp. 888 (D. Del. 1991)..................................................................................... 3
*Suders v. Easton*
   325 F.3d 432 (3rd Cir. 2003). ......................................................................................... 4
*TDE Petroleum Data Sols., Inc. v. AKM Enter.*
   657 F. App'x 991 (Fed. Cir. 2016). ............................................................................... 10
*Thales Visionix Inc. v. United States*
   850 F.3d 1343 (Fed. Cir. 2017)....................................................................................... 6
*TriPlay, Inc. v. WhatsApp Inc.*
   C.A. No. 13-1703-LPS, 2015 U.S. Dist. LEXIS 55068 (D. Del. Apr. 28, 2015). ...................... 11
*Turbe v. Gov't of the Virgin Islands*
   938 F.2d 427 (3d Cir. 1991)............................................................................................ 3
*Ultramercial, Inc. v. Hulu*, LLC
   772 F.3d 709 (Fed. Cir. 2014)......................................................................................... 4
*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*
   635 F. App'x 914 (Fed. Cir. 2015). ............................................................................... 10
*VideoShare, LLC v. Google, Inc.*
   2016 U.S. Dist. LEXIS 100860 (D. Del. Aug. 2, 2016) ............................................... 10
*Wisniewski v. Johns-Manville Corp.*
   812 F.2d 81 (3d Cir.1987)............................................................................................... 4

## Statutes

FED. R. CIV. P. 12(c)............................................................................................................. 3
FED. R. CIV. P. 56(c).............................................................................................................. 3

## TABLE OF ABBREVIATIONS

| Term | Abbreviation |
|---|---|
| Defendant HP Inc. | HP |
| U.S. Patent No. 8,547,601 | The '601 Patent |
| Mot. To Dismiss (D.I. 6, 7) | Mot. at __ |
| Plaintiff | OpenPrint |

**I.      NATURE AND STAGE OF PROCEEDINGS**

Plaintiff OpenPrint LLC sued Defendant HP Inc. ("HP") on August 3, 2017 for infringement of claims of U.S. Patent Nos. 6,209,993 (the "'993 Patent"), 6,717,699 (the "'699 Patent"), and 8,547,601 (the "'601 Patent") (collectively, "the Patents-in-suit"), which were filed in 1996 and 1997.[1]  HP has filed a Motion for Judgment on the Pleadings That U.S. Patent No. 8,547,601 is Invalid ("Motion").

**II.     INTRODUCTION**

HP's Motion should be denied as the '601 Patent is directed to a specific solution to a technological problem which existed in the realm of facsimile ("fax").  Additionally, the '601 Patent also contains ample inventive concepts that, if necessary, render the claims patent eligible.  If the Court does not outright deny Defendant's Motion, the Court should adjudicate the Motion after claim construction as genuine disputes exists regarding the claim limitations which affect the patentability analysis.

**III.    BACKGROUND OF THE INVENTION**

The invention described in the '601 Patent is a system which is capable of sending a fax thru traditional analog fax means and communicating the same fax thru digital means as an email message.  As such, the patent is appropriately described as a "Multi-Function System" patent.

The '601 Patent is directed to a Multi-Function System which is a *unitary* facsimile machine and computing device capable of sending a hardcopy document "via a fax device to its recipient" and converting the document so that "it can be retrieved . . . at an E-mail device" "via electronic mail through a data network". '601 Patent, at Abstract.

The invention of the '601 Patent solves several problems with the prior art.  For example,

---

[1] OpenPrint has asserted Claims 1, 2, 6, 7, 8, 10, 14, 15, and 17 of the '993 Patent, Claims 6, 8, 9, and 10 of the '601 Patent, and Claim 1 of the '699 Patent. (D.I. 1 at ¶¶ 11, 24, and 31).

the '601 Patent solves the problem with separate inoperable systems by the "uniting of traditionally distinct message delivery systems such as facsimile delivery and electronic mail delivery." '601 Patent, 1:30-33, Figs. 7, 13. The specification identifies the problems with the prior art and how the invention of the '601 Patent solves those problems. *Id.* at 1:39-2:2 (Discussing problems with prior art, including only allowing for facsimile output, storing only notifications rather than the actual message, or only allowing for delivery of email messages by fax and not fax messages by email). To overcome these problems, the invention combines a traditional fax machine with a computing device capable of communicating with an email server to create a multi-function system which handles a "fax message by converting the message to a computer-readable image file . . . attaching it to [an] E-mail [] and the systems cooperative interaction between the interface device and the FEM-GATEWAY *uniquely allow the present invention the intended goal* of delivering fax messages via email." *Id.* at 2:47-53.

Additionally, U.S. Patent No. 8,941,888 Patent (the "'888 Patent") issued on January 27, 2015, well after the *Alice* decision and had been considered by the examiner under the USPTO's *Alice* examination guidelines. *See* Ex. A. Given that the '601 Patent and the '888 Patent share specifications and the asserted claims of the '601 Patent is similar in scope to those of the '888 Patent, this factor weighs in favor of patent eligibility. In fact, other courts have explicitly considered allowance of similar claims by the USPTO with deference. *See Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1258 (Fed Cir. 2012); *see also Garfum.com Corp. v. Reflections by Ruth*, Civil Action No. 14-5919 (JBS/KMW), 2016 U.S. Dist. LEXIS 174134, *11 (D.N.J. Dec. 16, 2016) ("Plaintiff argues that the PTO's allowance of nearly identical claims in this '615 application belies the Court's determination it 'should have been obvious' to Plaintiff that there was no inventive concept in the '618 patent. The Court agrees."). As such, this Court should be

inclined to consider the USPTO's findings "with deference" in its patentability determination.

## IV. LEGAL AUTHORITIES

### A. Fed. R. Civ. P. 12(c)

When deciding a Rule 12(c) motion for judgment on the pleadings, a district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001); *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir. 1993). The motion can be granted only if no relief could be afforded under any set of facts that could be provided. *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *see also Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 891 (D. Del. 1991); *Cardio-Medical Associates, Ltd. v. Crozer-Chester Medical Ctr.*, 536 F. Supp. 1065, 1072 (E.D. Pa. 1982) ("If a complaint contains even the most basic of allegations that, when read with great liberality, could justify plaintiff's claim for relief, motions for judgment on the pleadings should be denied."). However, the court need not adopt conclusory allegations or statements of law. *In re General Motors Class E Stock Buyout Sec. Litig.*, 694 F. Supp. 1119, 1125 (D. Del. 1988). Judgment on the pleadings will only be granted if it is clearly established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988).

"If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(c). Summary judgment is appropriate if there are no genuine issues of material fact presented and the moving

3

party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir.1987). In determining whether a genuine issue of fact exists, we resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Suders v. Easton*, 325 F.3d 432, 435 n. 2 (3rd Cir. 2003).

      **B.**      **35 U.S.C. § 101**

The Supreme Court has laid out a two-part test for determining whether an invention is patent eligible under 35 U.S.C. § 101. *Id.* at 2350. First, the court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* If so, the court must then as "whether the claims elements, considered both individually and 'as an ordered combination,' 'transform the nature of the claim into a patent-eligible application.'" *Id.*, citing *Mayo*, 132 S. Ct. at 1289.

      1.      <u>Whether the Claims are Directed Towards Excluded Matter</u>

The first step of the test requires a court to determine if the claims are directed to a law of nature, natural phenomena, or abstract idea. *Alice*, 134 S. Ct. at 2355. "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 714 (Fed. Cir. 2014). In making this determination, the court looks at what the claims cover. *Id.* ("We first examine the claims because claims are the definition of what a patent is intended to cover."). "[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification," and asks "whether 'their character as a whole is directed to excluded subject matter.'" *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (internal citations omitted). However, in applying the analysis, the court must not apply an overly high level of abstraction or one that is untethered from the language of the claims. *Id.* at 1337 ("describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions

4

to § 101 swallow the rule."). In other words, in determining whether the claims are directed to an abstract idea, courts must be careful to avoid oversimplifying the claims because "[a]t some level, 'all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas,'" *Alice*, 134 S.Ct. at 2354 (*quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012)). *Cf. Diamond v. Diehr*, 450 U.S. 175, 189 n. 12 (1981) (cautioning that overgeneralizing claims, "if carried to its extreme, make[s] all inventions un-patentable because all inventions can be reduced to underlying principles of nature which, once known, make their implementation obvious.").

Neither the U.S. Supreme Court nor the Federal Circuit has set forth a bright line test separating abstract ideas from concepts that are sufficiently concrete so as to require no further inquiry under the first step of the Alice framework. *See, e.g., Alice*, 134 S. Ct. at 2357; *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (observing that the U.S. Supreme Court did not "delimit the precise contours of the 'abstract ideas' category in Alice") (quotation marks omitted). As a result, in evaluating whether particular claims are directed to patent-ineligible abstract ideas, courts have generally begun by "compar[ing] claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334 (Fed. Cir. 2016); *see also Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016).

For example, courts have considered whether the claims purport to "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, which is not abstract, or instead whether "computers are invoked merely as a tool" to carry out an abstract process. *Enfish*, 822 F.3d at 1335 (noting that "some improvements in computer-related technology when appropriately claimed are undoubtedly not abstract, such as a chip architecture, an LED display, and the like.

5

Nor do we think that claims directed to software, as opposed to hardware, are inherently abstract[.]").

Similarly, the Federal Circuit has found that claims directed to a "new and useful technique" for performing a particular task were not abstract. *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1349 (Fed. Cir. 2017) (holding that "claims directed to a new and useful technique for using sensors to more efficiently track an object on a moving platform" were not abstract); *Rapid Litigation Management Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1045, 1050 (Fed. Cir. 2016) (holding that claims directed to "a new and useful laboratory technique for preserving hepatocytes," a type of liver cell, were not abstract); *see also Diehr*, 450 U.S. at 177 (holding that claims for a method to calculate the optimal cure time for rubber were not abstract).

"The first step of the [Alice] inquiry is a meaningful one, i.e., . . . a substantial class of claims are not directed to a patent-ineligible concept." *Enfish*, 822 F.3d at 1335 (emphasis in original). The court's task is thus not to determine whether claims merely involve an abstract idea at some level but rather to examine the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents*, 790 F.3d at 1346.

### 2. Whether the Claims Contain an Inventive Concept

A claim drawn to an abstract idea is not necessarily invalid if the claim's limitations—considered individually or as an ordered combination—serve to "transform the claims into a patent-eligible application." *Content Extraction*, 776 F.3d at 1348. In other words, step two is the "search for an inventive concept." *Bascom Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). "The 'inventive concept' may arise in one or more of the individual claim limitations or in the ordered combination of the limitations." *Id.* An inventive concept "transforms the abstract idea into a patent-eligible invention must be significantly more than the

abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a computer." *Id.* Conventional activities "do not constitute everything in the prior art however, although conventional elements and prior art may overlap." *Enfish*, 56 F. Supp. 3d at 1175. Furthermore, "[a]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 827 F.3d at 1350. Therefore, courts must consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* at 1247. Claims directed to an abstract idea are patent eligible if they include unconventional steps that confined the claims to a particular, useful application of the principle. *Mayo*, 132 S. Ct. at 1300.

V. **ARGUMENT**

    A. **The Asserted Claims of the '601 Patent are Patent Eligible**

        1. <u>The Asserted Claims are not Directed to an Abstract Idea</u>

Defendant alleges that the '601 "patent claims are directed to the abstract idea of moving a document from one format (facsimile) to another (e-mail)." Motion at 6. This oversimplification completely ignores the actual language of the claims. When the actual claim language is considered (*See* Ex. B, listing of claims),'601 Patent, Claim 6 (which is a computer-readable storage medium version of claim 1) and its dependents are not directed to Defendant's purported abstract idea. Instead, they are directed to a novel solution to a specific technological problem that existed, *i.e.*, being able to use a ***unitary*** multi-function system to send a fax to an email account. '601 Patent, 1:30-34 ("The present invention relates generally to the field of communications . . . with ***uniting*** of traditionally distinct message delivery systems such as facsimile delivery and electronic mail delivery." (emphasis added)).

7

The '601 Patent specification specifically lists the problems that existed in the prior art, and how the inventions of the '601 Patent solved those technological problems. The Patent does not purport to invent the idea of "moving a document from one format (facsimile) to another (e-mail)" but rather a specific *unitary* system and concrete steps to operate with a fax device, receive fax information from the fax device, interpret input from the fax device, convert a fax to a computer readable image, attaching the image to email rather than incorporating it into the email using the *unitary* system.

This type of technological solution, which allowed for new functionality, is exactly the type of invention that the Federal Circuit has expressly stated are not abstract. For example, in *DDR Holdings*, the Federal Circuit found a patent which solved a problem which "did not exist within the brick and mortar context" to be patent eligible. 773 F.3d at 1258. Similarly, the '601 Patent is directed to solving a specific technological problem that exists only in the fields of faxes and computers, *i.e.*, how to send a facsimile message to an e-mail address using a unitary system. In *Amdocs*, the claim entailed an unconventional technological solution (enhancing data in a distributed fashion) to a technological problem (massive record flows which previously required massive databases). 2016 U.S. App. LEXIS 19593 at * 28. The solution in *Amdocs* requires arguably generic components, including network devices and "gatherers" which "gather" information. *Id.* However, the claim's enhancing limitation necessarily requires that these generic components operate in an unconventional manner to achieve an improvement in computer functionality. *Id.* The enhancing limitation depends not only upon the invention's distributed architecture, but also depends upon the network devices and gatherers—even though these may be generic—working together in a distributed manner. *Id.*

Similarly, the claims at issue here—while employing some arguably generic

components—require that the components operate in an unconventional manner, integrating a server, which communicates over both a digital computer network, as well as a traditional telephone network. '601 Patent at Claim 6; 4:23-28. Furthermore, the server and facsimile device are connected to one another via the public communications network (*Id.* at Fig. 1) or integrated into a single unit (*Id.* at Fig. 15). This schema was decidedly unconventional and presented significant advantages over the prior art. The inventions overcome a specific technological problem, mingling "quick and easy facsimile delivery of messages and the popularity of low cost delivery of message via electronic mail". *Id.* at 1:35-37.

Defendant relies heavily on *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*. to argue that merely delivering a fax to an e-mail address is an abstract idea. Motion at 12 *citing* 776 F.3d 1343 (Fed. Cir. 2014). However, the claims here are unlike those of *Content Extraction*. In *Content Extraction*, the claims at issue were directed at merely any scanning device scanning in hard copy documents and recognizing portions of that document corresponding to a data field and storing that in memory. *Content Extraction*, 776 F.3d 1343, 1345. Here, the '601 Patent solves a specific problem in the realm of fax systems which previously required multiple systems by providing for a system wherein operable with a fax device and also operable with an email server such that the unitary Multi-Function system utilizes both fax information along with e-mail functionality.

Defendant's reliance on *Mortg. Grader, Inc. v. First Choice Loan Serv. Inc.* is also misplaced. 811 F.3d 1314, 1318 (Fed. Cir. 2016). In that case, the claims at issue were directed to a computer-implement system for enabling borrowers to anonymously shop for loan packages offered by a plurality of lenders – something almost on par with the financial claims in *Alice*. *Id.*

Likewise, the claims of the '601 Patent are nothing like the "method to screen a vehicle

operator for impairment" in *Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*. 635 F. App'x 914, 916 (Fed. Cir. 2015). Nor are the claims of the '601 Patent anything like a "method for detecting events on an inter-connected electric power" in *Elec. Power Grp., LLC v. Alstom S.A.* 830 F.3d 1350, 1351 (Fed. Cir. 2016). Nor are the claims of the '601 Patent like an "automated method for determining the state of a well operation" in *TDE Petroleum Data Sols., Inc. v. AKM Enter.*, 657 F. App'x 991, 992 (Fed. Cir. 2016)(a non-precedential opinion). None of the cases relied on by Defendant relate to a solution to the problem of a fax machine which only allowed for facsimile output, storing only notifications rather than the actual message, or only allowing for delivery of email messages by fax and not fax messages by email through the invention of a Multi-Function System. Likewise, the additional dependent claims 8, 9, 10 improve on this invention by adding additional features.

      Defendant's reliance on *VideoShare, LLC v. Google, Inc.*, is also misplaced. No. 13-cv-990 (GMS), 2016 U.S. Dist. LEXIS 100860 (D. Del. Aug. 2, 2016). There the patent at issue was directed to nothing more than the "abstract idea of preparing a video in streaming video format for sharing over a computer network." *Id.* at *23. As shown above, the Multi-Function System Patents are directed to a specific technological problem—sending an analog facsimile message to an electronic mail box—using non-generic special purpose hardware, *i.e.*, a server connected to both a telephone network as well as a digital data network.[2]

---

[2] Similarly, Defendant's reliance on *Affinity Labs of Tex. v. DIRECTV, LLC* is also misplaced. 838 F.3d 1253 (Fed. Cir. 2016). There the court held that the patent at issue claimed nothing more than "the general concept of out-of-region delivery of broadcast content through the use of conventional devices, without offering any technological means of effecting that concept." *Id.* at 1262. Defendant also relies on a series of cases for the same proposition as *Affinity Labs*, which fail for exactly the same reason—*i.e.*, the Multi-Function System Patents use specific non-generic hardware and they are directed to solving a specific technological problem. *See* Brief at 12 (*citing Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) (holding use of generic components to perform abstract idea not patent-eligible); *Mortgage*

10

All of the patents involved in the cases cited by Defendant are distinguishable from the Multi-Function System Patent. This *unitary* system performs defined steps to operate with a fax device and an e-mail server, used as an attachment to send to an email recipient. As such, these patents are not directed to an abstract idea.

### 2. The '601 Patent Claims Contains an Inventive Concept

Even assuming arguendo that the Court deems that the claims are directed to an abstract idea, the claim language recites sufficient inventive concept to otherwise render them patent eligible. The Court describes step two of this analysis as a search for an "inventive concept" — *i.e.*, an element or ordered combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355. Here, the claim elements—especially the ordered combination of elements— exhibit an inventive concept that ensures that the patent invention, in practice, amounts to significantly more than simply moving a document from one electronic formation to another.

For example, Figures 1 and 13, reproduced below, are illustrative of embodiments of the invention claimed in claim 13.

---

*Grader, Inc. v. First Choice Loan Servs.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) (generic computer components do not satisfy inventive concept requirement); *EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x 969 (Fed. Cir. 2017) (holding use of generic computer technology to perform data collection, analysis, and publication and does not recite an improvement to a particular computer technology");; *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, C.A. No. 13-1632-LPS, 2017 U.S. Dist. LEXIS 134551 (D. Del. Aug. 23, 2017) (holding same); *Parus Holdings, Inc. v. Sallie Mae Bank*, 137 F. Supp. 3d 660 (D. Del. 2015) (holding same); *Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*, Civil Action No. 14-612-RGA, 2015 U.S. Dist. LEXIS 116647 (D. Del. Sep. 2, 2015) (holding mere recitation of generic computer with abstract idea not patent eligible). Conversely, *TriPlay, Inc. v. WhatsApp Inc.*, which Defendant cites, supports Plaintiff's position. *See* Brief at 13. In *TriPlay*, the court found that claims which incorporated non-generic computers such as a "user's gate way" and "3rd party applications' gateway" was not directed to an abstract idea. *See TriPlay, Inc. v. WhatsApp Inc.*, C.A. No. 13-1703-LPS, 2015 U.S. Dist. LEXIS 55068, at *59 (D. Del. Apr. 28, 2015). In much the same way, the Multi-Function System Patent relies on a non-generic server and interface to solve a problem.

11



FIG. 1

FIG. 13

The figures, on their faces, make clear that the claimed invention is substantially more than simply converting a document from one format to another. The summary of the invention further states that "[t]he present invention bridges two networks," the telephone network and the E-mail network. '601 Patent, 2:58-63. The server must also "convert fax image data to image data". *Id.*

12

at 7:25-35. While some of the components of the system are described as "well known" the combination of components—including a server in connection with both a facsimile device and a data network—is certainly unconventional.

The claim language itself also makes it clear that the claims are directed to substantially more than the idea of moving a document from one format to another. First, claim 6 is directed to "receiving facsimile information from a facsimile device" and "receiving…from the facsimile device, a destination e-mail address to which the facsimile information is to be sent" – something that could not be done with a traditional unitary fax machine at the time of the invention. Claim 6 also recites "interpreting the destination e-mail address" which the '601 Patent explains as being performed "the combined unit sending device 358… at the dual function keypad 360." '601 Patent, 22:4-7. The system must also then be able to covert the facsimile information into a computer readable image file. *Id* at claim 6. These limitations ensure that the claims are directed to far more than delivering a fax to an email address.

In *Meetrix*, a case involving similar technology, the Court found that patents that "relate to audio conferencing over standard telephone networks (called 'public switch telephone networks,' or 'PSTN') along with audio-video conferencing over Internet networks (called 'Internet protocol,' or 'IP,' networks)' were patent eligible. *Meetrix IP, LLC v. Citrix Sys. et al.* Case No. 1-16-CV-1033 (W.D. Tex.,July 27, 2017). "Meetrix' s claims involve an unconventional technological solution (mixing media over hybrid networks) to a technological problem (transporting audio and video data together over low bit-rate networks)." *Id.* at 5 "The solution includes the use of generic components, including PSTN, VoIP, IP, and VPN." *Id.* "However, the claims' limitations necessarily work together to operate in an unconventional manner to provide an inventive system and process to improve the collaboration of audio and video telecommunications." *Id.* at 5-6.

*Citing Amdocs (Israel) Ltd.*, 841 F.3d at 1300-01.  Likewise, the Multi-Function System Patent involves an unconventional solution (combining a facsimile device with an email server into a unitary system and converting a fax to a computer readable image file) to a technological problem (sending a fax to an email recipient) to provide an inventive concept.

### 3. If Defendant's Motion isn't Denied Outright, the Claims Should Be Construed Prior to Adjudication

"[C]laim construction is helpful to resolve the question of patentability under §101." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1311 (Fed. Cir. 2016).  If the Court does not outright deny Defendant's Motion, construction of the terms "[facsimile] interface device," "facsimile device/machines," and "facsimile component" are necessary prior to determining patentability.

As discussed above, the invention of the '601 Patent is directed to a ***unitary*** system capable of converting a fax image to a computer readable file for transmission to an email address.  This is unique as the '601 Patent overcame prior art wherein multiple systems were used to communicate both faxes and emails (*e.g.* faxes are communicated between fax machines and emails are communicated between separate email systems).

With respect to claims 6, 8, 9, and 10 of the '601 Patent, the term "interpreting the destination e-mail address from the alphanumeric form" should be construed as "translating input from the facsimile machine keyboard into a computer readable e-email address."  Additionally, the term "facsimile information" should be construed as "fax image data."  Both of these terms further support the "multi-function" aspect of the claimed invention. Furthermore, when properly construed these terms make it clear that the claims are directed to more than moving a document from one format to another and, therefore, are not directed to an abstract idea.

14

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied and this Court should find that the '601 Patent is directed to patent eligible subject matter.

November 27, 2017

| | |
|---|---|
| OF COUNSEL:<br>Neal G. Massand<br>Hao Ni<br>Timothy Wang<br>Ni, Wang & Massand, PLLC<br>8140 Walnut Hill Ln., Ste. 310<br>Dallas, TX 75231<br>(972) 331-4600<br>nmassand@nilawfirm.com<br>hni@nilawfirm.com<br>twang@nilawfirm.com<br>Jeffrey G. Toler<br>Craig Jepson<br>TOLER LAW GROUP, PC<br>8500 Bluffstone Cove, Suite A201<br>Austin, TX 78759<br>(512) 327-5515 | */s/ Timothy Devlin*<br>Timothy Devlin<br>Delaware Bar No. 4241<br>DEVLIN LAW FIRM LLC<br>1306 N. Broom Street, 1st Floor<br>Wilmington, DE 19806<br>Phone: (302) 449-9010<br>tdevlin@devlinlawfirm.com<br><br>*ATTORNEYS FOR PLAINTIFF*<br>*OPENPRINT LLC* |

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic filing on November 27, 2017.

*/s/ Timothy Devlin*
Timothy Devlin