**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| OPENPRINT LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1077-GMS |
| | ) | |
| HP INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
ITS MOTION FOR JUDGMENT ON THE PLEADINGS
THAT U.S. PATENT NO. 8,547,601 IS INVALID UNDER 35 U.S.C. § 101**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

I. THE CLOSELY-ANALOGOUS DECISIONS IN *CONTENT EXTRACTION* AND *EASYWEB* ARE DISPOSITIVE ........................................................................ 2

II. *ALICE* STEP ONE: THE CLAIMS ARE DIRECTED TO AN ABSTRACT IDEA ........ 3

    A. The Asserted Claims Are Not Directed to a "Specific Unitary System" ........................................................................................................ 3

    B. The Claimed "E-Mail Server" Is A Conventional Computer Operating in a Conventional Manner ............................................................ 4

    C. The '601 Patent's Purported Improvements Do Not Impart Eligibility ............................................................................................................. 5

III. *ALICE* STEP TWO: THE CLAIMS LACK AN INVENTIVE CONCEPT ...................... 7

IV. PLAINTIFF'S PROPOSED CONSTRUCTIONS ADD NOTHING ............................... 9

V. THE PTO DESERVES NO SPECIAL DEFERENCE HERE ....................................... 10

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
 728 F.3d 1336 (Fed. Cir. 2013)..................................................................................1

*Alice Corp. Pty. Ltd. v. CLS Bank Inten.*,
 134 S. Ct. 2347 (2014)..................................................................................3, 4, 7, 10

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
 841 F.3d 1288 (Fed. Cir. 2016)..................................................................................7

*Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*,
 2017 WL 3188451 (Fed. Cir. July 27, 2017)..............................................................6

*buySAFE v. Google Inc.*,
 765 F.3d 1350 (Fed. Cir. 2014)..................................................................................9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
 776 F.3d 1343 (Fed. Cir. 2014)..................................................................................2

*DDR Holdings, LLC v. Hotels.com, L.P.*,
 773 F.3d 1245 (Fed. Cir. 2014)..................................................................................6

*EasyWeb Innovations, LLC v. Twitter, Inc.*,
 689 F. App'x 969 (Fed. Cir. 2017) .............................................................................2

*Elec. Pwr. Grp., LLC v. Alstom S.A.*,
 830 F.3d 1350 (Fed. Cir. 2016)...............................................................................3, 7

*EveryMD.com LLC v. Amazon.com, Inc.*,
 No. 2-17-cv-05573, Dkt. 26 (C.D. Cal. Dec. 5, 2017)................................................2

*Fromson v. Advance Offset Plate, Inc.*,
 720 F.2d 1565 (Fed. Cir. 1983)..................................................................................3

*Garfum.com Corp. v. Reflections by Ruth*,
 2016 U.S. LEXIS 174134 (D.N.J. Dec. 16, 2016)...................................................10

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
 792 F.3d 1363 (Fed. Cir. 2015)..................................................................................6

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
 850 F.3d 1332 (Fed. Cir. 2017)..................................................................................2

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)......................................................................................7, 8

*LendingTree, LLC v. Zillow, Inc.*,
    656 F. App'x 991 (Fed. Cir. 2016) ........................................................................................5

*In re Salwan*,
    681 F. App'x 938 (Fed. Cir. 2017) ........................................................................................9

*Sciele Pharma Inc. v. Lupin Ltd.*,
    684 F.3d 1253 (Fed. Cir. 2012).........................................................................................10

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017)..............................................................................................6

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016)........................................................................................1, 3

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016).........................................................................................7, 9

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017).......................................................................................8, 9

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)........................................................10

*VideoShare, LLC v. Google, Inc.*,
    2016 U.S. Dist. LEXIS 100860 (D. Del. Aug. 2, 2016) ........................................................5

*Wright Medical Tech., Inc. v. Osteonics Corp.*,
    122 F.3d 1440 (Fed. Cir. 1997)............................................................................................3

**Statutes**

35 U.S.C. §101...................................................................................................................1, 8, 10

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
| --- | --- |
| HP | HP Inc. |
| OpenPrint or Plaintiff | OpenPrint LLC |
| Complaint | D.I. 1 |
| Motion or Mot. | D.I. 9 |
| Opposition or Opp. | D.I. 13 |
| The '601 patent | U.S. Patent No. 8,547,601 |
| PTO | United States Patent and Trademark Office |

**INTRODUCTION**

Plaintiff asks this Court to reimagine the asserted '601 patent claims as detailed recitations of a "specific unitary system" that may have been contemplated by the patentee, but certainly not claimed. Instead, when deciding what to patent, the patentee sought extremely broad, generic claims that recite nothing more than the idea of moving a document from one format (facsimile) to another (e-mail). That abstract idea is not eligible for patent protection.

In its Opposition, Plaintiff contends that this abstract idea is an "oversimplification" because it "completely ignores the actual language of the claims." D.I. 13 ("Opp.") at 7. Not only was this abstract idea distilled from the asserted '601 patent claims, *see* D.I. 9 ("Mot.") at 7-12, but it also adheres faithfully to the Federal Circuit's mandate that "[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). Plaintiff, on the other hand, subverts this well-settled jurisprudence: the full language of asserted claims 6, 8, 9, and 10 appear *nowhere* in the Opposition brief, and Plaintiff devotes scant attention to only a few selective limitations.

Rather than defend the asserted claims under existing law, Plaintiff points to generic, conventional computer components disclosed in the ***specification*** but recited nowhere in the ***claims***. Plaintiff's position ignores the Federal Circuit's holding that "the complexity of the implementing software or the level of detail in the specification does not transform a claim reciting an abstract concept into a patent-eligible system or method." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013); *Synopsys*, 839 F.3d at 1149 ("[C]omplex details from the specification cannot save a claim directed to an abstract idea."). Plaintiff's invitation to disregard binding precedent should be rejected. The '601 patent claims are invalid as a matter of law, and nothing in Plaintiff's Opposition suggests otherwise.

**ARGUMENT**

I.  **THE CLOSELY-ANALOGOUS DECISIONS IN *CONTENT EXTRACTION* AND *EASYWEB* ARE DISPOSITIVE**

Plaintiff's claims are invalid under *Content Extraction* and *EasyWeb*. These cases are directly on point, controlling, and consistent with more recent Federal Circuit precedent.

The asserted '601 patent claims are drawn to nothing more than the abstract idea of moving a document from one format (facsimile) to another (e-mail). *See* Mot. at 7-12. This is not meaningfully different from the ineligible claims in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014), which involved receiving and recognizing data from a fax, or the ineligible claims in *EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x 969 (Fed. Cir. 2017), which involved converting information from one digital file format to another before transmitting the formatted file electronically. *See also, e.g., EveryMD.com LLC v. Amazon.com, Inc.*, No. 2-17-cv-05573, Dkt. 26 (C.D. Cal. Dec. 5, 2017) (finding ineligible method claims where "a computer system receives an email message from a sender to a recipient, modifies the message to include an address created for the sender, and forwards the message to the recipient"—"the asserted claims [] are drawn to the basic idea of exchanging messages, or information, through an intermediary.").

The only distinction Plaintiff draws is that those cases did not involve a "unitary Multi-Function system [that] utilizes both fax information along with e-mail functionality." *See* Opp. at 9. That is no distinction at all. Plaintiff does not (and cannot) reasonably dispute that the asserted '601 patent claims fall squarely within what the Federal Circuit has deemed a "familiar class" of patent-ineligible claims "involving ***data collection***, ***analysis***, and ***publication***." *EasyWeb*, 689 F. Appx at 971 (emphasis added); *e.g., Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332 (Fed. Cir. 2017) (finding ineligible claims "directed to the

abstract idea of collecting, displaying, and manipulating data"); *Elec. Pwr. Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (finding ineligible claims directed to "collecting information, analyzing it, and displaying certain results of the collection and analysis").

## II. *ALICE* STEP ONE: THE CLAIMS ARE DIRECTED TO AN ABSTRACT IDEA

### A. The Asserted Claims Are Not Directed to a "Specific Unitary System"

Plaintiff's first eligibility argument—that the asserted claims are directed to "a unitary multi-function system" that "send[s] a fax to an email account," Opp. at 7—should be rejected because it ignores the actual language of the claims. While the *specification* may describe this purported system, the *claims* do not. *Synopsis*, 839 F.3d at 1149.

Far from a "specific unitary system," the asserted '601 patent claims recite only "computer executable instructions"—*i.e.*, software—for causing "an apparatus" to deliver a fax to an e-mail. D.I. 1, Ex. C (the "'601 patent") at claim 6. Nothing in claim 6 requires that the "apparatus" include the fax machine. Instead, claim differentiation requires that the fax machine be separate from the apparatus. *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1570 (Fed. Cir. 1983) ("Significant evidence of the scope of a particular claim can be found on review of other claims."). Indeed, claim 7, which depends directly from claim 6, requires that the fax machine be "*remote*" from the apparatus. *Wright Medical Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1445 (Fed. Cir. 1997) ("[W]e must not interpret an independent claim in a way that is inconsistent with a claim which depends from it"). This is why a human can "perform[] each and every recited operation of the claimed apparatus using only a generic fax machine, computer, and scanner," *see* Mot. at 14—a point Plaintiff never disputes.

The decision not to limit the asserted '601 patent claims to a unitary system was an intentional one. The patentee chose to omit such claim language during prosecution of the '601 patent, and the effect of this omission is straightforward: by restricting the claim language to the

3

basic building blocks of a software routine for moving a fax to an e-mail, Plaintiff avoids the risk of the asserted claims being too narrow to capture the different components and arrangements companies like HP use in their products. But Plaintiff's attempt to capture a broader scope renders the claims ineligible. *See Alice Corp. Pty. Ltd. v. CLS Bank Inten.*, 134 S. Ct. 2347, 2354 (2014) ("We have repeatedly emphasized this … concern that patent law not inhibit further discovery by improperly tying up the future use' of these building blocks of human ingenuity.").

Once stripped of the unsupported "unitary system" verbiage, Plaintiff's characterization of the asserted '601 patent claims is not meaningfully different than the abstract idea advanced by HP: "send[ing] a fax to an email account," Opp. at 7, is no less abstract than "moving a document from one format (facsimile) to another (e-mail)," Mot. at 6.

**B. The Claimed "E-Mail Server" Is A Conventional Computer Operating in a Conventional Manner**

Plaintiff's second eligibility argument—that the asserted claims recite "non-generic special purpose hardware, *i.e.*, a server connected to both a telephone network as well as a digital data network," Opp. at 10—is not only unsupported by the '601 patent, but contradicted by it.

The '601 patent acknowledges that preexisting servers were capable of making such connections, "configured and inter-operating in a manner that will be clearly understood by one skilled in the art." *See* '601 patent at 6:28-45 ("the E-Mail Server 112" consists of a preexisting "model VFX40ESC voice/fax/modem communication interface" that connects to a phone network through a "standard T-1 digital communication link"), 5:54-63 (preexisting servers used "wired and wireless communication interfaces" and "various modems"). The '601 patent even admits that prior art servers included both a phone "modem" and a "data network interface." *Id.* at 8:10-18 (admitting that "acceptable components of the E-mail Server 112" include a

4

preexisting "1400FXSA modem" and "SMC9332DST" "data network interface"). Thus, the claimed "e-mail server" is just a generic computer operating in a conventional manner.

Nor does "integrating" the e-mail server with a facsimile device require the server to "operate in an unconventional manner." *See* Opp. at 8-9. As the '601 patent makes clear, prior art systems integrated e-mail servers with facsimile devices "to accomplish the delivery of E-mail messages by way of facsimile." *See* '601 patent at 1:54-58; *see also id.* at 1:48-54 (admitting that prior art disclosed "a single, 'unified' electronic mailbox for storing either messages or notification of the existence of messages of different types")). In fact, the '601 patent explains that various "components of the Fax-Server 110" are "configured and inter-operating in a manner that would be clearly understood in the art." *Id.* at 6:37-45. Even the "software and operation" of "the E-mail Server 112" "is considered well known to those skilled in the art." *Id.* at 8:28-31. Nothing in the '601 patent or the Opposition suggests otherwise.

### C. The '601 Patent's Purported Improvements Do Not Impart Eligibility

Finally, Plaintiff insists that the asserted '601 patent claims are not abstract because they are directed to "a novel solution to a specific problem that existed"—namely, "mingling 'quick and easy' facsimile delivery of messages and the popularity of low cost delivery of messages via electronic mail." Opp. at 9 (citing '601 patent at 1:35-37). That alone cannot impart eligibility.

As shown above, the asserted '601 patent claims do not require any improved server or fax components for "mingling" or "uniting" fax and e-mail delivery. *See* Mot. at 8-9. Instead, the asserted claims merely purport to ***automate*** the very process that people performed when manually moving a fax to an e-mail, using only generic computer and fax components operating in a conventional manner. *Id*. at 14. But "[i]t is well-settled law [that] automating conventional activities using generic technology does not amount to an inventive concept." *LendingTree, LLC v. Zillow, Inc.*, 656 F. App'x 991, 996 (Fed. Cir. 2016); *VideoShare, LLC v. Google, Inc.*, 2016

5

U.S. Dist. LEXIS 100860, at *19 (D. Del. Aug. 2, 2016) (finding ineligible claims that used a "general purpose computer" to "automat[e] a sequence of known steps using conventional technology so that a human is not burdened with various manual steps").  Nor can "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer [] provide a sufficient inventive concept." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015); *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, 2017 WL 3188451, at *3 (Fed. Cir. July 27, 2017) ("[A]dd[ing] computer functionality and recit[ing] use of the Internet to increase the speed and efficiency of an abstract process" is "not enough").

In an attempt to shoehorn the asserted '601 patent claims into the *DDR* framework, Plaintiff argues that the claims "solv[e] a problem that exists only in the fields of faxes and computers, *i.e.*, how to send a facsimile message to an e-mail address."  Opp. at 8 (citing *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014)).  But the claims in *DDR* "specifi[ed] *how* interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink."  *DDR*, 773 F.3d at 1258 (claims eligible where they "recite a specific way of accomplishing the abstract idea.").  The asserted '601 patent claims do no such thing.  Nothing in the claims describes *how* the purported problem is solved—*e.g.*, *how* the "apparatus" connects to the "facsimile device" and the "e-mail server."  Furthermore, the claims neither recite a "unitary system" nor describe *how* these components are purportedly combined in a "unitary system."  At best, the asserted claims merely automate or simplify a conventional process "without offering any technological means of effecting that concept." *Affinity Labs*, 838 F.3d at 1262 (distinguishing *DDR*); *see, e.g.*, *Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905,

6

910 (Fed. Cir. 2017) (claims ineligible where they "are not directed to specific details of the [solution]" and "do not set out how [it] is to be performed.").

Plaintiff's reliance on *Amdocs* is equally unavailing. The patent there required a specific "distributed architecture" that distributed "a number of field enhancements" in a specific fashion, thereby providing an "unconventional technological solution (enhancing data in a distributed fashion) to a technological problem (massive record flows which previously required massive databases)." *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300 (Fed. Cir. 2016). Simply put, the claims "describe[d] a specific, unconventional technological solution, narrowly drawn to withstand preemption concerns, to a technological problem." *Id*. at 1306. Not so here. *Amdocs'* specific technical solution contrasts sharply with the generality of the '601 patent. The asserted claims broadly describe a conventional message delivery process without any "specific or limiting recitation of … improved computer technology." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016).

In sum, the asserted '601 patent claims "are directed not to an improvement in [computers] but simply to the use of [computers] as ***tools*** in the aid of a processed focused on an abstract idea." *Affinity Labs*, 838 F.3d at 1262 (emphasis added). The claimed apparatus is "merely a conduit for the abstract idea" of moving a document from one format (facsimile) to another (e-mail). *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016). Claims that are "so result focused, so functional, as to effectively cover any solution to an identified problem" are patent ineligible. *Elec. Pwr. Grp.*, 830 F.3d at 1356.

### III.   *ALICE* STEP TWO: THE CLAIMS LACK AN INVENTIVE CONCEPT

Despite contending that "the claim language recites sufficient inventive concept to otherwise render them patent eligible," Plaintiff never identifies a claim element providing an inventive concept. *See* Opp. at 11-13. Plaintiff instead points to unclaimed computer

7

components from the specification to argue that the "the claimed invention is substantially more than simply converting a document from one format to another." *Id*. Settled Federal Circuit law, however, forecloses this argument. *See, e.g., Symantec*, 838 F.3d at 1322 (reversing eligibility finding because "[t]he district court erred in relying on technological details set forth in the patent's specification and not set forth in the claims to find an inventive concept.").

Plaintiff's brief ignores the most recent Federal Circuit decision addressing precisely the § 101 issues at play here. In *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329 (Fed. Cir. 2017), decided last month but mentioned nowhere in the Opposition, the Federal Circuit rejected the same argument advanced by Plaintiff here. In that case, the plaintiff argued that its claim was patent eligible because the specification described a "computer architecture that solved the technical problems of load, bottlenecking, and inadequate records." *Id*. at 1336. The Federal Circuit disagreed, explaining that "the claim does not recite this architecture" and "only uses generic functional language to achieve these purported solutions." *Id*. at 1339. As the court explained, "[t]he main problem that [plaintiff] cannot overcome is that the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept." *Id*. (emphasis in original). "While the specification may describe a purported innovative 'scalable architecture,' [the asserted claim] does not." *Id*. Put differently, "[t]o save a patent at step two, an inventive concept must be evident in the claims." *Id.*

The '601 patent figures cited by Plaintiff are simply block diagrams of conventional computer and facsimile components arranged in a conventional manner. Nothing in the '601 patent suggests otherwise. Nor does the "e-mail server"—the only component Plaintiff points to that actually appears in the asserted claims—supply an inventive concept. As explained above, the claimed server consists of nothing more than conventional computer hardware operating in a

8

conventional manner, which is "simply not enough to transform the abstract idea into a patent-eligible invention." *See In re Salwan*, 681 F. App'x 938, 941 (Fed. Cir. 2017) (claims reciting "a generic 'network,' 'computer program,' 'central server,' 'device,' and 'server for processing and transferring'" lacked an inventive concept); *see also In re TLI*, 823 F.3d at 615 ("[V]ague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention."); *buySAFE v. Google Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (software for receiving and sending information over a server is "not even arguably inventive").

## IV. PLAINTIFF'S PROPOSED CONSTRUCTIONS ADD NOTHING

Recognizing the ineligibility of its claims, Plaintiff invites this Court to "adjudicate the Motion after claim construction" because its proposed constructions "affect the patentability analysis." Opp. at 1, 14. This invitation should be rejected for two separate reasons.

*First*, claim construction is unnecessary because Plaintiff's offered constructions, even if adopted, do not confer eligibility.

| Term | Plaintiff's Proposed Construction |
|---|---|
| "interpreting the destination e-mail address from the alphanumeric form" | "translating input from the facsimile keyboard into a computer readable e-mail address" |
| "facsimile information" | "fax image data" |

Neither construction adds significantly more to the abstract idea. To the contrary, Plaintiff's proposed constructions encompass admittedly-conventional processes for moving a document from one format to another. *See* '601 patent at 6:37-45 ( "the Fax-Server 110" includes "program and data storage" for "fax image data and information received from a fax device" and "a keyboard," both "configured and inter-operating in a manner understood by one skilled in the art"). "At best, the constructions propose the use of generic computer components to carry out the recited abstract idea, but that is not sufficient." *Two-Way Media*, 874 F.3d at 1338.

*Second*, "addressing section 101 at the outset of litigation will have a number of salutary effects." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). Not only does it "conserve scarce judicial resources" by exposing the ineligibility of the '601 patent—a patent asserted across three separate cases—"at the point of minimum expenditure of time and money," but it also "provide[s] the most efficient and effective tool for clearing the patent thicket, weeding out those patents that stifle innovation." *Id*.

## V. THE PTO DESERVES NO SPECIAL DEFERENCE HERE

Finally, the Court should reject Plaintiff's argument that the PTO's allowance of U.S. Patent No. 8,941,888 (the "'888 patent") somehow "weighs in favor" of finding the asserted '601 patent claims eligible because the '888 patent claims were "considered by the examiner under the USPTO's *Alice* examination guidelines." Opp. at 2. Not only does Plaintiff fail to explain why this Court should defer to the PTO's eligibility findings for a different patent, but it also fails to proffer any evidence that the examiner addressed *Alice* during prosecution of the '888 patent.

Plaintiff's cited cases are inapposite: *Sciele Pharma Inc. v. Lupin Ltd*., 684 F.3d 1253 (Fed. Cir. 2012), never mentions deference in § 101 actions; and *Garfum.com Corp. v. Reflections by Ruth*, 2016 U.S. LEXIS 174134, at *11 (D.N.J. Dec. 16, 2016), deemed the PTO's eligibility finding relevant only as a factor weighing against awarding attorneys' fees after the Court's own finding of ineligibility. Lastly, the Court need only give the PTO deference under the clear and convincing standard, which Plaintiff acknowledges does not apply here. *Sciele*, 684 F.3d at 1260; Opp. at 4. Thus, special deference need not be given to the PTO in this case.

## CONCLUSION

For the foregoing reasons, HP respectfully requests that the Court find the asserted claims of the '601 patent invalid under 35 U.S.C. §101.

| | |
|---|---|
| OF COUNSEL: | Respectfully submitted, |
| Rick L. Rambo<br>MORGAN, LEWIS & BOCKIUS LLP<br>1000 Louisiana Street, Suite 4000<br>Houston, TX 77002-5005<br>Tel: (713) 890-5000<br>rick.rambo@morganlewis.com | MORGAN, LEWIS & BOCKIUS LLP<br><br>*/s/ Amy M. Dudash*<br><br>Amy M. Dudash (No. #5741)<br>The Nemours Building<br>1007 N. Orange Street, Suite 500<br>Wilmington, DE 19801<br>Tel: (302) 547-7293<br>amy.dudash@morganlewis.com |
| Jason E. Gettleman<br>MORGAN, LEWIS & BOCKIUS LLP<br>1400 Page Mill Road<br>Palo Alto, CA 94304<br>Tel: (650) 843-4000<br>jason.gettleman@morganlewis.com | |
| Dated: December 11, 2017 | *Attorneys for Defendant HP Inc.* |

11